VICENTE USERA LASEDA, Plaintiff and Appellee, *v.* LUCE & Co., *S. en C.,* Defendant and Appellant.

No. 8101. Argued January 23, 1941.—Decided March 20, 1941.

*Hartzell, Kelley & Hartzell* and *Rafael O. Fernández,* for appellant; *Erasto Arjona Siaca,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Vicente Usera filed suit in the District Court of Ponce claiming $16,298 as damages for the nonperformance of a contract, expressly invoking the provisions of Section 1054 of the Civil Code (1930 ed.).

The complaint contains two causes of action. In stating the first it is said that plaintiff resides in Ponce and that defendant is a civil agricultural partnership, whose principal office is at Salinas; that the plaintiff leased 13 rural farms to the defendant, all of which were situated in the Municipality of Santa Isabel, for a term of 15 years, ending June 30, 1939; that besides its legal obligations the defendant accepted the contractual obligations which are specified, and that when the contract terminated and the properties were returned to the plaintiff he examined them and found that the defendant had committed nine violations of its legal obligations and six of its contractual obligations, all of which he sets forth separately and whereby he alleges damages in the amount of $14,798.

As a basis for the second cause of action the facts alleged in regard to the first are stated anew and it is then alleged that plaintiff leased to the defendant another rural property situated in Santa Isabel, which he describes, also subject to the legal and contractual obligations which he again specifies, and that certain ones enumerated by him had been violated, thereby causing him damages in the amount of $1,500.

The defendant filed a motion to strike, a demurrer and a petition for removal to the district court of its residence, Guayama, alleging that the action involved was a personal action. He attached an affidavit of merits to his petition.

The plaintiff opposed the removal and the court denied the motion as follows:

"... the court is of the opinion that according to paragraph 1 of Section 79 of the Code of Civil Procedure of Puerto Rico, as it was amended by Act No. 18 of April 11, 1935, the present suit, which is an action for the collection of damages, in accordance with the provisions of Section 1054 of the Civil Code of.Puerto Rico (1930 ed.), should be heard in the corresponding district, that is, in this district court for the judicial district of Ponce, which includes the municipality of Santa Isabel."

Feeling aggrieved the defendant appealed. It alleges two errors as committed by the district court in holding that the case falls within the provisions of the first paragraph of Section 79 of the Code of Civil Procedure (1933 ed.), as it was amended by Act No. 18 of 1935 ((1) p. 174), and in denying the removal. The existence of the second depends on the first.

The venue in civil suits is regulated by the fifth title of the Code of Civil Procedure, Sections 75 to 86.

This suit involves a personal action—a suit for damages for nonperformance of a contract—and therefore, according to the general rule as found in Section 81, the suit should be heard in the district wherein the defendant resides unless there is another provision of law applicable.

The plaintiff alleges that this other provision exists and is found in Section 79 as amended by Act No. 18 of 1935, (p. 174), and we know that the lower court upheld him. The defendant alleges that this legal provision does not have the scope attributed to it by the court and the plaintiff and that therefore the general rule is the one applicable.

Both Sections 81 and 79 of our Code of Civil Procedure originated in the continent. Section 81 is equivalent to Section 395 of the Code of Civil Procedure of California and to Section 3182 of the Code of Civil Procedure of Idaho (1901) and has not been altered since 1904 when our Code was approved. Section 79 is equivalent to Section 393 of the

Code of Civil Procedure of California and to Section 3180 of the Code of Civil Procedure of Idaho (1901) and has been altered.

Section 79, paragraph 1, which is the one in controversy, originally read:

"Section 79.—Action for the following causes must be tried in the district where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial:

"1.—For the recovery of a penalty or forfeiture imposed by statute; except that, when it is imposed for an offense committed on a body of water, bordering on two or more districts, the action may be brought in any district bordering on such body of water, and opposite to the place where the offense was committed."

In 1928, it was amended by Act No. 34, p. 224, and its scope enlarged in the following manner:

"Section 79.—Action for the following causes must be tried in the district where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial:

1.—*To obtain indemnity from an insurance company, when such indemnity arises from an insurance policy contract, or to recover damages under Section 1803 of the Civil Code,* or for the recovery of a penalty or forfeiture; except that when it is imposed for an offense committed on a body of water bordering on two or more districts, the action may be brought in any district bordering such body of water, and opposite to the place where the offense was committed."

The italics contain the matter wherein it was amplified.

Seven years later, in 1935, by Act No. 18 of that year, p. 174, the Section was again amended, as follows:

"Section 79.—Action for the following causes must be tried in the district where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial:

"1.—To obtain indemnity from an insurance company, when such indemnity arises from an insurance policy contract, or to recover damages under Sections 1803 *and 1804* of the Civil Code, edition of 1902 (Sections 1802 *and 1803,* edition of 1930), *or by virtue of any other precept of law,* or for the recovery of a penalty or forfeiture; except that when it is imposed for an offense committed on a body

of water bordering on two or more districts, the action may be brought in any district bordering such body of water, and opposite to the place where the offense was committed.''

This is the way it reads now and read at the time this case was decided by the district court. The italics contain the amendment.

The legislator in a clear manner, excepted from the general rule, personal actions in which a cause of action or part of it, originated in a certain district, providing that they should be heard in said district, as follows:

(*a*) To obtain indemnity from an insurance company, when such indemnity arises from an insurance policy contract;

(*b*) To recover damages according to Sections 1802 and 1803 of the Civil Code, 1930 ed.;

(*c*) To recover damages according to any other provision of law.

And the lower court taking into consideration that from the facts alleged in the complaint it was apparent that the legal and contractual violations which caused the damages claimed had occurred in the Municipality of Isabela and therefore within its judicial district, and that the suit filed was that authorized by Section 1054 of the Civil Code, 1930 ed., which provides that ''those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby'', decided that the case fell within the amendment of 1935 and that it was the proper court for the hearing of the case.

In a well-studied and prepared brief the appellant sustains that as Section 81 states the general rule—in keeping with the modern tendency that it should be the personal condition rather than the territorial which should decide the venue of suits (67 C.J. 19, 24)—the exception should appear in an express and unequivocal manner, specially when a party is being deprived of a valuable right such as the right of

a defendant to have the case heard in the place of his resi-
dence. He argues and concludes that the phrase added "or
by virtue of any other precept of law" only means "any
other precept of law similar to Sections 1803 and 1804 of the
Civil Code, 1902 ed. (1802 and 1803, 1930 ed.)".

He then draws our attention to the fact that the liability
as stated in the cited Sections of the Civil Code is limited
to that arising from fault or negligence and to this effect
he cites the opinion of Manresa, Vol. 12, p. 612, 1911 ed. and
sustains that as the cause of action in this case arose from
a contract, it is not of a similar nature and is not as a
consequence thereof included in the statute.

To uphold this limiting interpretation as to the scope of
the exception to the general rule which is contained in the
amendment of 1935, he invokes the maxims *"expressio unius
est exclusio alterius"*, *"ejusdem generis"* and *"noscitur a
sociis"*, citing cases wherein said maxims have been applied.

Nevertheless, the mental effort made by the appellant does
not convince us that the lower court erred in interpreting
and applying the law by following the usual meaning of its
words and the apparent legislative intention in amplifying
the scope of action of the statute.

Sections 79 and 81 of the Code of Civil Procedure have
been repeatedly interpreted by this Court. In *Font* v. *Cas-
tro,* 33 P.R.R. 746, 751, the Court, through its Associate Jus-
tice, Mr. Franco, said that Section 81 provided for "the cases
not coming under the preceding Sections, the absolute right
of a defendant to have his case tried in the district of his
residence." Therefore, we entirely agree with the appellant
in that the general rule relating to personal actions is that
the case should be tried in the district of the residence of
the defendant. We also agree with him in that this is a
valuable right of which the defendant can not be deprived
unless the legislator so provides.

Where we do not agree with the appellant is in that the
new rule has such a limited scope as he states. In our opinion

this rule, speaking for itself, determined that besides suits filed for the collection of an indemnity against an insurance company arising from an insurance contract and those filed to recover damages according to Sections 1802 and 1803 of the Civil Code (1930 ed.), those cases filed by virtue of any other legal provision should also be heard in the district wherein the cause of action or part of it originated. It would be far-fetched to say that the legislative intention was that this legal provision should depend absolutely on the previous cited statutes. The amendment is entirely independent and has its own existence and as such it amplifies the scope of action of the statute.

We admit the special nature of suits arising out of fault or negligence. They are regulated by the second chapter of the 16th title of the IV Book of the Civil Code. This book includes, in general, obligations and contracts; the 16th title obligations which are incurred without a contract; and its second chapter those that arise from fault or negligence.

The suit herein filed is not based on title 16 of the 4th book of the Civil Code. Here the parties contracted for a lease and one of them, alleging the violation by the other of certain legal obligations which formed part of the contract, and of others specifically stated in the contract, filed suit, invoking as an authority for the same Section 1054 of the Civil Code, which imposes liability for damages upon those who, in complying with their obligations, cause damages through deceit, negligence or delay or who in any way violate the provisions of the same.

Every obligation consists in giving, doing or not doing something. Obligations are created by law, by contracts, by quasi-contracts and by illicit acts or omissions or by those in which any kind of fault or negligence occurs. Sections 1041 and 1042 of the Civil Code, 1930 ed.

Therefore, obligations arise from 5 different sources, according to our Civil Code. The law, that did not appear as a special source in the Roman Law, was added by the

Spanish legislator and has remained. Trying to determine the real limits of this special source since that element—the law—is always found intermingled to some extent with others, Manresa says:

"Since the law and a particular fact always concur to create an obligation, the different function, importance and, so to say, activity, that to cause such a result those elements have in each case, make it possible to say, according to which predominates, that the obligation is derived from one or the other. When the law only guarantees the fulfillment and exigibility of the obligation giving form and security to the act that creates it or even more, states that such obligation is derived from a contract or a tort, or that it is essential to the same, it can not be said that the law is the origin of those obligations, since at the most it regulates them, or it can even be said, declares them, but always as an effect derived from a fact, whose nature it determines to assign to it the force which it should have. But when the law does not only include within its scope the consequences of a fact which gives rise to obligations, but establishes them by statute, limiting the importance and scope of the fact to a mere compliance with the legal assumption, which indicates the moment and determines the occasion on which the obligation virtually contained in the statute can be demandable, then the obligation has its origin in the law." 8 Manresa, *Comentarios al Código Civil*, p. 17, 4th ed.

And Scaevola says:

"The law is undoubtedly, as all commentators recognize, the primary source of obligations, because it springs from the State and the State is the social power which directs, regulates, determines and contains the activity of all the citizens, harmonizing their mutual relations.

"Therefore, when one says that a contract creates an obligation, it is meant that said obligation takes force from the law that permits the parties to bind themselves; and if, in fact, it can be demanded, it is due to the law, which has opened the way for it in the field of free activity and which, through its mandate, will help to make it enforceable.

"But from the law some obligations arise directly and others indirectly; some are intermingled within it, and others pressume an act of the will which becomes their proximate cause.

"The former are properly included in the group of obligations created by law. Among these are matters of public policy, where as it is known, the private interest, on account of its lesser importance, always gives way to the social interest. The law, then, imposes upon individuals the obligations whose fulfillment is considered necessary for life in a community and the will of the citizens takes no part in the definition of the obligation, not even as to whether the same will cause a lesser or greater limitation of liberty.

"Among these obligations are all those of public, political or administrative law. Military service, the payment of taxes, serving in the jury, appearance as a witness, all fall within this class. Their number, as will be seen easily, is countless, since within this group fall all obligations derived from the constitution of the State and from all political and administrative laws and regulations.

"These are followed by all the obligations of a civil order imposed by the civil and commercial codes. . . . We shall only indicate, as has been said before, that those that concern public policy have such a character; for example family relations and guardianship, forced liens on real property, legal mortgages, etc. The obligation to support a child, to be the guardian of an orphan; to give a right of way through our own property to the owner of the adjacent one; to secure with all our worldly goods what we receive as dowry; all these are obligations which arise from the law, which were called by the Romans *ex lege*, which do not depend on the will of the party bound to its fulfillment, which are imposed thereon with hardness and inevitably, and must be perforce fulfilled, whether the party so wishes to do or not." 19 Scaevola, *Código Civil*, 376.

As it may be seen, this case involves an obligation which does not arise exclusively from the law. It really deals with an obligation arising as a consequence of violations of a contract, entered into according to law.

Section 79 of the Code of Civil Procedure, which we are interpreting, does not require that the obligation violated arise from the law. It refers to actions claiming damages *"according.* to Sections 1802. . . ." or *"by virtue* of any other legal provisions."

The facts and the law complement themselves in contracts as well as in quasi-contracts and in obligations arising from fault or negligence. The determining factor to establish the

venue of the case in applying the rule of Section 79 is, in our opinion, that *a suit to recover damages should be filed according to the Sections of the Civil Code expressly men-* *tioned or according to any other legal provision,* such as Section 1054 of the Civil Code.

This Court had an opportunity to give a glimmering of its opinion in this sense in deciding the case of *Zayas Pizarro* v. *Molina,* 48 P.R.R. 900.

A short while before it had decided the case of *Alvarez* v. *American R. R.,* 48 P.R.R. 464. At that time Section 79 was in force only as it had been amended in 1928, that is, citing Section 1802, as it appears in the 1930 edition only. It was alleged that as Section 1803, as appears in the 1930 edition, was not expressly cited, and that as the suit involved was one for the collection of damages, according to the provision which was not cited, the rule applicable was that of the residence of the defendant and not that of the place in which the cause of action originated, and this Court decided:

"The motives guiding the lawmaker in extending the obligation might be variously interpreted, but the fact is that he imposed the obligation, and that the rule of Section 1803 (sec. 1802, 1930 ed.) is applicable not only to the case where the action for damages is brought against the person directly causing the damage through fault or negligence, but also to the case where it is brought against the person responsible for the acts of the person whose fault or negligence caused the damage, and the actions in both cases should be tried in the district where the cause of the litigation arose, as provided by Section 79 of the Code of Civil Procedure, 1933 ed." Page 467.

Several months elapsed and the said case of *Zayas Pizarro* v. *Molina, supra,* was decided in the sense that "an action for damages for slander is not comprised within Section 79 of the Code of Civil Procedure, as amended in 1928." And in the course of the opinion it was said:

" . . . In this instance the Legislature was specific, separating the actions not only in enacting the special statute, but also in referring to them within the general provisions of the code to which

the trial judge also refers—section 1868 of the Civil Code, 1930 ed.—; and it must be concluded that in enacting the provisions of law upon which plaintiff relies—section 79 of the Code of Civil Procedure, as amended in 1928 (Act No. 34, Session Laws, p. 224)—in which reference is made only to Section 1803 of the Civil Code (sec. 1802, 1930 ed.), the Legislature did not intend to include actions arising from insult or calumny. If its intention had been otherwise, it would have spoken with the clarity with which it spoke in the latest amendment made by Act No. 18 of April 11, 1935 (Session Laws, p. 174), which became effective on July 11, 1935."

At first sight it appeared to us that the legislator had been clear in extending its rule in regard to Sections 1802 and 1803 of the Civil Code, as they appear in the 1930 ed., that is for claims for damages arising from fault or negligence, to all other claims for damages filed by virtue of any other legal provision and now, after a careful study, we reaffirm our opinion.

The maxims invoked by the appellant are not applicable because they are taken into consideration only when it is necessary to interpret provisions wherein the legislator has not spoken clearly, as he did in this case.

The decision appealed from must be affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.